## SOUTH FORK BREWING CO. et al. v. UNITED STATES.[*]

(Circuit Court of Appeals, Third Circuit. August 1, 1924.)

No. 3154.

1. **Appeal and error** ⊙⟩1054(3)—**Admission of incompetent evidence not ground for reversal of decree in equity.**

Admission of incompetent evidence in a suit in equity is not ground for reversal of the decree where it is fully supported by other competent evidence.

2. **Intoxicating liquors** ⊙⟩275—**Decree closing brewery as nuisance held supported by the evidence.**

A decree under National Prohibition Act, tit. 2, § 21 (Comp. St. Ann. Supp. 1923, § 10138½jj), closing a brewery as a common nuisance, *held* supported by the evidence.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Suit in equity by the United States against the South Fork Brewing Company and others. Decree for the United States, and defendants appeal. Affirmed.

Thomas H. Hasson, of Pittsburgh, Pa., for appellants.

Walter Lyon, U. S. Atty., and Arthur W. Henderson, Sp. Asst. U. S. Atty., both of Pittsburgh, Pa.

Before WOOLLEY and DAVIS, Circuit Judges, and BODINE, District Judge.

[*] Certiorari denied 45 S. Ct. 125, 69 L. Ed. ——.

DAVIS, Circuit Judge. The appellee filed a bill of complaint pursuant to the provisions of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) against the South Fork Brewing Company and its officers, charging them with maintaining a common nuisance on the property occupied by the brewing company at South Fork, Pa., in violation of section 21 of title 2 of that act (Comp. St. Ann. Supp. 1923, § 10138½jj). The government alleged that the appellants "unlawfully manufactured, kept, bartered, sold and transported from the premises * * * a fermented malt liquor fit for use for beverage purposes, to wit, beer, containing one-half of one percentum and more of alcohol by volume," and prayed the court to abate the nuisance by enjoining them from maintaining the premises as a place where intoxicating liquor was manufactured, sold, kept or bartered and on final hearing to enter a decree that all intoxicating liquor on the premises be destroyed and that the premises be locked and not occupied or used for one year thereafter. Upon the evidence submitted the learned trial judge found that a nuisance had been maintained on the premises as alleged in the bill. He thereupon, in December, 1923, entered a decree restraining the defendants from maintaining the nuisance and from removing the fixtures, and closed and locked the premises for one year. On February 11, 1924, a supplemental decree was entered that the beer, 1,270 barrels, be destroyed. From these decrees the defendants have appealed to this court, and the vital question is whether or not the evidence was sufficient to sustain the decrees.

Michael J. Onko, a state policeman, testified that "on September 4th of this year I was ordered by my troop commander to proceed to the South Fork Brewery with Private Dodson, and me and Private Dodson left headquarters in the car and proceeded to South Fork, and got to South Fork, at the corner of River and Main streets, where I got out of the car and went down across the railroad track, on the east side, I think, of the brewery, down along the creek, and got under a warehouse just opposite the brewery I crawled in under the warehouse, where I don't think I could be hardly seen, and remained there, and knew where Private Dodson was with the car. About—well, to the best of my knowledge, about 12 o'clock, a truck came in I couldn't identify the number from where I was, but I could identify the truck, by the hood over the seat; and the truck was loaded with beer, backed up

and loaded with beer. About 12:30 the truck pulled out and started up River street towards South Fork, and I seen Private Dodson taking after the truck. And I remained under the warehouse in my place of concealment, to see if there were any more trucks come in for beer."

Jackson R. Dodson, another state policeman, mentioned above by Onko, testified that he and Onko left the barracks at Greensburg and arrived at South Fork around 12 o'clock on September 4, 1923; that Onko went to the brewery and Dodson remained in his car, so that he could see any truck going and coming from the brewery; that within 10 or 15 minutes after their arrival he saw an empty truck leave the highway and go to the brewery; that 25 or 30 minutes later the same truck came out, loaded with 10 half barrels of beer; that when it passed he "hollered" at the driver, who refused to stop, and he (Dodson) followed up the street leading towards Johnstown for about a quarter of a mile, and stopped the truck within sight of the brewery; that the beer on the truck contained more than 4 per centum of alcohol, and that he took possession of the truck and placed the driver in the Johnstown jail. The learned trial judge, who saw and heard these men testify, said: "We believe the stories and the testimony of these state police, and are absolutely convinced that the beer in question was being taken from this brewery to a customer of the brewery."

This conclusion in our opinion is entirely justified by the evidence. The defense on the merits consists principally of the testimony of Frank Campbell, the driver of the truck. The trial judge characterized his testimony as a "ridiculous story" and said: "This whole story of the truck driver is not worthy of credence." His testimony in effect was that he got the beer from some unknown person, to be delivered to some unknown club, in some unknown place. This testimony does seem to us incredible.

[1] The appellants further contend that the decrees should be reversed because an officer was allowed, over objection, to state what the driver of the truck told him as to where he got the beer; no connection between the driver and the appellants having been shown. But the government came pretty nearly establishing connection between the driver and the defendants. When the truck was stopped, a helper jumped off and ran away. Not long after and while Dodson was testing the beer, an unknown person came up, and, after some preliminaries,

offered Dodson $1,000 to release the truck. This was refused, and the driver was taken to the Johnstown jail. Dan C. Parsons, Esq., a director of the brewing company, appeared at the jail that day and represented the driver, although he had not sent for him or in any way communicated with him. But, be this as it may, this was a case in equity, tried before the judge without a jury. His conclusions were not based on statements, direct or indirect, made by the driver. His testimony was not "worthy of credence," and so was entirely disregarded. The testimony of Onko and Dodson alone justifies the conclusions of the court. The testimony of the officer as to what the driver said did not prejudice the appellants, and so does not justify a reversal of the decrees. Lancaster v. Collins, 115 U. S. 222, 227, 6 Sup. Ct. 33, 29 L. Ed. 373; Lazarus v. Phelps, 156 U. S. 202, 15 Sup. Ct. 271, 39 L. Ed. 397.

[2] The appellant corporation on April 11, 1922, pleaded guilty in the same court to a criminal information charging it with the unlawful manufacture of intoxicating liquor on the premises in question between the dates of June 1, 1921, and September 4, 1921, and with the maintenance of a common nuisance on the premises between those dates. After mentioning this fact, and the fact that on September 5, 1923, the defendants in the present case had unlawfully manufactured, kept for sale, and transported from the premises the beer in question, the trial judge said: "From all this, we find that the said premises are used and maintained as a place where intoxicating liquor * * * is manufactured and kept for sale in violation of the provisions above described, by the defendants above named." To base the decrees to any extent upon the former plea of guilty, as was evidently done, defendants say, was erroneous. That the brewing company was guilty of maintaining a nuisance on the premises in question 2 years and 3 months before is only one of the facts constituting the history of this case. The plea of guilty in the former case was evidence of a past condition, which presumptively continued. Shore v. United States (C. C. A.) 282 Fed. 857. That a similar condition existed on September 5, 1923, establishes the presumption as a fact. The testimony of Onko and Dodson, quite apart from the fact of the brewing company's antecedent guilt, is quite sufficient to justify the conclusion that a statutory nuisance was maintained on the premises, and therefore the decrees are affirmed.